UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.   Case No. 8:25-cr-00456-KKM-AAS

DESIREE DOREEN SEGARI

_____/

DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE OPPOSING HER RULE 29 MOTION FOR ACQUITTAL

The Defendant, Desiree Doreen Segari, by and through her attorney, pursuant to this Court's order (Doc. 74) and in support of her motion for judgment of acquittal (Doc. 71), replies to the government's response opposing her Rule 29 motion (Doc. 76), arguing as follows:

As a matter of law, the government failed to prove that Ms. Segari—whether she specifically intended or with reckless disregard—transmitted a true threat in interstate commerce to injure the person of another in violation of 18 U.S.C. § 875(c). The government's arguments opposing her motion for judgment of acquittal under Fed. R. Crim. P. 29 are underwhelming, unavailing, and unpersuasive.[1]

---

[1] Ms. Segari renews and reserves each of the arguments she presented in her Rule 29 motion for judgment of acquittal—those raised at the close of the government's case in chief (Doc. 71), in her PowerPoint presentation (Doc. 77), and those raised in this reply. She doesn't concede any of the arguments raised by the government opposing her Rule 29 motion (Doc. 76). Not for lack of want, but because space in her reply is limited.

1

## I.     The Commerce Clause.

The government might be confused (Doc. 76 at 10) as to Segari's reliance on *United States v. Haas*, 37 F.4th 1256 (7th Cir. 2022). *Haas* is instructive in so far as it frames the Commerce Clause issue in § 875(c) cases, surveys the relevant Supreme Court precedent, and identifies a circuit split on the mere use of the internet to satisfy federal nexus. 37 F.4th at 1264–65. That's it—nothing more, nothing less. But conveniently, the government fails to raise a single argument opposing the express language of § 875(c) and the meaning of the phrase "in interstate commerce." Instead, the government mistakenly relies on *United States v. Lopez*, 514 U.S. 549 (1995) for the general proposition that Congress has the power to regulate commerce under Article I of the Constitution in three broad categories (Doc. 76 at 7). *Lopez*, 514 U.S. at 558–59. This isn't at issue.

Let's get things straight. In terms of § 875(c), Ms. Segari isn't arguing about whether Congress *may* regulate threatening speech transmitted in interstate commerce; rather, she's arguing about *how far* Congress expressly went to regulate threatening speech transmitted in interstate commerce. Congress unequivocally exercised *less* of its regulatory powers under the Commerce Clause when it enacted § 875(c). "Congress uses different modifiers to the word 'commerce' in the design and enactment of its statutes." *Circuit City Stores, Inc. v.*

2

*Adams*, 532 U.S. 105, 115 (2001). "[T]he general words 'in commerce' . . . are understood to have a more limited reach." *Id.*

In enacting § 875(c), dating as far back as 1948 and the preceding statutes, Congress expressly prohibited transmitting threatening speech to injure the person of another "in interstate commerce"—not the "facilities of interstate commerce"; not the "channels of interstate commerce"; not the "instrumentalities of interstate commerce"; and not "in or affecting interstate commerce." "Statutes that contain language such as 'in interstate commerce' require proof that state lines were crossed; by contrast, statutes with language such as 'affecting commerce' or 'any facility of interstate commerce' require proof only that the criminal activity involved an instrumentality or channel of interstate commerce." *Haas*, 37 F.4th at 1256 (citing *Circuit City Stores*, 532 U.S. at 115). The mere showing that Ms. Segari used TikTok and the Internet, without more, isn't enough proof to show that she transmitted her videos "in interstate commerce."

The Ninth and Tenth Circuits got it right. If Congress expressly regulates something using only the phrase "in interstate commerce," then use of the internet alone isn't enough to show that there's a federal nexus; instead, the government must prove that something (the thing itself to be regulated) was sent from one state to another state. *United States v. Wright*, 925 F.3d 583, 594 (9th Cir. 2010), *superseded on other grounds by statute as recognized by United States v. Brown*,

3

785 F.3d 1337, 1351 (9th Cir. 2010) (holding that previous iteration of CP statute, 18 U.S.C. § 2252A(a)(1), containing only "in interstate . . . commerce" federal nexus language required proof that CP crossed state lines); *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) (holding that jurisdictional hook in 18 U.S.C. § 875(c) was satisfied where defendant electronically sent threats and social security numbers to internet servers located across state lines"); *United States v. Korab*, 893 F.2d 212, 213 (9th Cir. 1989) (holding that government failed to prove that threatening and extortionist telephone calls, which were wholly intrastate, travelled across state lines in 18 U.S.C. § 875(b) prosecution); *United States v. Schaefer*, 501 F.3d 1197, 1200–01 (10th Cir. 2007) (holding that government, relying solely on defendant's mere use of internet, failed to prove jurisdictional nexus in 18 U.S.C. § 2252(a)(2) prosecution).

This same logic applies in Ms. Segari's case and § 875(c). It's the first point of transmission that matters. As clever as it may be, this isn't a novel argument (Doc. 76 at 11–12) by any stretch of the imagination. It's a measured and reasoned interpretation of the plain meaning of § 875(c)'s jurisdictional element using traditional tools of statutory construction, like the general terms canon, the grammar canon, the associated words canon, the reenactment canon, the related-statutes canon, the prior-construction canon, and the rule of lenity. All these canons (if not more) point to the plain and logical conclusion that transmitting a

threat to injure the person of another "in interstate commerce" requires proof of where the first transmission went, which might raise a Commerce Clause issue.

The government's parade of horribles—having to prove that something was transmitted out of state—is total conjecture (Doc. 76 at 12). Based on the evidence presented at trial (or the lack thereof) we don't know whether a witness from TikTok could or couldn't trace Ms. Segari's transmission in the first instance from Sarasota, Florida, elsewhere. This "trust me bro" style of advocacy isn't befitting of the federal government. It was well within its right to call such a witness and attempt to establish this fact but for whatever reason chose not to. This was folly. The government needed to prove that Ms. Segari's TikTok videos weren't transmitted intrastate first to a TikTok server in Miami, Florida, before people around the country viewed them. It failed. What's more, subsequent transmissions of Ms. Segari's TikTok videos, however many times by however many people (Doc. 76 at 12) are of no consequence in § 875(c) prosecutions.

Let's turn next to the government's reliance (Doc. 76 at 8–9) on *United States v. Baker*, 514 F. Supp. 3d 1369 (N.D. Fla. 2021). *Baker* centered around a criminal complaint, a preliminary hearing, and the determination as to whether there was probable cause to believe that the defendant transmitted a threat to injure someone in violation of § 875(c). *Id.* at 1375. Probable cause ain't exactly the highest standard. *Id.* at 1376. Maybe uncontested evidence or generalizations

of how Facebook and the Internet works are good enough for a probable cause determination. *Id.* at 1377. Not so for proof beyond a reasonable doubt and a Rule 29 motion for judgment of acquittal. The government failed to present any evidence on how the Internet works, how Ms. Segari's TikTok videos were transmitted over the Internet, and failed to prove that her videos made a pitstop at a TikTok server in Miami, Florida, before being sent out of state. The mere fact that Timothy Miles, the complaining witness in Ohio, saw Ms. Segari's TikTok videos isn't enough for § 875(c) prosecutions. The government totally ignores this point and asks this Court to assume facts that aren't in evidence.

And let's talk for a moment about the government's bait and switch tactics. (Doc. 76 at 9) here for a minute. Whether Ms. Segari intended her TikTok videos to be transmitted a certain way, whether she desired viewers to disseminate her videos so it could go viral, or whether it was reasonably foreseeable to her that they would be shared with others just aren't elements of the offense in any way, shape, or form. *See United States v. Darby*, 37 F.3d at 1059, 1067 (4th Cir. 1994) ("[T]hus the Government was required to prove that Darby's phone call crossed a state line (a fact not in dispute here), the Government did not need to prove that Darby knew of the interstate nexus."). This is a red herring. Send the bait back to the tackle shop.

6

## II. Statutory Construction.

Section 875(c) criminalizes the transmission of true threats to injure "the person of another."[2] Unidentified people in the MAGA movement aren't specific enough of a person to sustain a conviction within the meaning of § 875(c).[3] To the extent that the government seeks to prosecute her under § 875(c) for the generalized threats of violence she made towards unknown adherents of a political movement, the statute is just too vague and ambiguous as written—it just doesn't give her fair notice that the generalized threats she made on TikTok could be criminal.[4] After exhausting all tools of statutory construction and given the ambiguity, the rule of lenity would kick in in her favor.

Comparing *United States v. Khan*, 937 F.3d 1042 (7th Cir. 2019) to Ms. Segari's case (Doc. 76 at 10 n.3 and 19) is just about as good as comparing an

---

[2] Recently, the Supreme Court had occasion to interpret 18 U.S.C. § 924(c)(3)(A) and the phrase "against another":

> [W]e reject the argument that the phrase "against another" [in 18 U.S.C. § 924(c)(3)(A)] excludes crimes of omission. At most, that phrase requires that another person be "the conscious object" of the force the offender uses. *Borden v. United States*, 593 U.S. 420, 430 (2021) (plurality opinion). Put differently, the language "against another" specifies the required object of the force (another person, rather than, say, an animal), and possibly also the mens rea with which the object must be targeted (knowingly or intentionally, rather than negligently or recklessly). *Id.* at 430–34.

*Delligatti v. United States*, 604 U.S. 423, 434–35 (2025) (footnote omitted).

[3] What about our loved ones—those of the Court, counsel for the government, or even Ms. Segari's counsel—who are associated with the MAGA movement? Are they victims, too? Are we? Should all of us have recused ourselves from this matter then? That's the trouble with the government's theory of prosecution and its attempt at expanding the scope of persons in § 875(c) beyond what Congress had expressly stated and what it had intended.

[4] The government wrongly asserts that *Virginia v. Black*, 538 U.S. 343 (2003) is a § 875(c) case and that it "is not limited to threats against individuals" (Doc. 76 at 17–18). This simply isn't true.

anvil to an apple. It's a fool's errand. In fact, *Khan* highlights the problems with the government's theory of prosecution in Ms. Segari's case.

First, Khan never challenged the threats he transmitted on Facebook and the path of travel for said threats on Commerce Clause grounds and he didn't challenge the meaning of the phrase "against the person of another" in terms of notice and the rule of lenity under the Fifth Amendment's due process clause.

Second, Khan argued (unsuccessfully) against the sufficiency of the indictment for failing to allege that he ever intended to carry out the threats, which he could've raised as a defense at trial. *Khan*, 937 F.3d at 1049. Ms. Segari neither challenged the indictment on those grounds nor presented this as a defense at trial.

Third, Khan challenged (unsuccessfully) the indictment on sufficiency grounds for the government's failure to specifically allege "who he threatened, as well as where, when, why, and how threatened violence would occur." *Id.* at 1050. But the Seventh Circuit held that the indictment sufficiently apprised him of the threats he made:

> Regardless, this indictment provides the facts Khan claims are missing. It cites three specific threats, gives the itinerary of Khan's flight to Pakistan, and states that the operative facts were based on his Facebook "messages and photographs" accessible to "all Facebook users." That was enough to signal: what (threats of mass murder); who (at least six specified "targets"); where (the Chicago loop to the Northern Lincoln Park area); how (a nine-millimeter handgun, a .40 caliber semi-automatic handgun, and a 12-gauge semi-automatic shotgun); why (Khan felt

8

"provoked" by a lawsuit and noise pollution); and when (before he jumped on a plane to Karachi).

*Id.* The videos Ms. Segari posted on TikTok came nowhere near the level of specificity and particularity of defined targets in defined places that Khan had made in his posts. Her videos lacked any kind of threats to injure any specific identifiable person in the MAGA movement—just generalized threats against those who are associated with a political ideology. In that same vein, she never transmitted the videos to anyone directly let alone transmitted them to a particular person, such as Timothy Miles.

### III. First Amendment.

In terms of First Amendment protected speech goes, the parties are as far apart as east and west. Let's turn back to *Kahn* to wrap things up. Khan's defense at trial was that threats he made on Facebook were " 'facetious,' 'artistic,' 'hyperbole,' and emulation of rap songs 'protected by the First Amendment' " and weren't "true threats" as a matter of law *Id.* at 1049, 1055. But the jury and the Seventh Circuit felt differently:

> Khan's posts were so violent, explicit, and resolute that they constituted threats under either an objective or subjective standard. Among other macabre warnings, *Khan repeatedly and categorically threatened to murder defined targets in a defined area of Chicago and livestream "the grisly footage of death."* He also tied his threats to "revenge" for "provocations" and "persecutions" against him, connected the date of any attempted murder to his flight out of the country, and bragged about his "mental fortitude to pull it off." These personal referents undercut Khan's defense that his words were artistic expressions. This is enough to reasonably infer Khan's intent to

9

commit an act of unlawful violence towards a particular group of individuals.

*Kahn*, 937 F.3d at 1055 (emphasis added). Khan's threats were "true threats" as a matter of law. Khan specifically defined his targets, specifically defined where they would be targeted, and specifically defined how they would be targeted. This is a far cry from the generalized threats Ms. Segari made. She merely advocated for violence. Unlike in *Kahn*, Ms. Segari made generalized threats of violence against *anyone* that's part of the MAGA movement—an incalculable and imprecise group of adherents of a political ideology. As a matter of law, her speech, much like the speech in *United States v. Watts*, 394 U.S. 705 (1969), is protected under the First Amendment.

In sum, the Court should reject the government's arguments opposing her motion for judgment of acquittal under Fed. R. Crim. P. 29 and grant her motion.

Respectfully submitted February 3, 2026.

                                        **CHARLES L. PRITCHARD, JR.**
                                        **FEDERAL PUBLIC DEFENDER**

                                        */s/ Stephen Consuegra*
                                        Assistant Federal Defender
                                        Florida Bar. No. 105816
                                        400 N. Tampa Street, Suite 2700
                                        Tampa, Florida 33602
                                        Telephone: (813) 228-2715
                                        Facsimile: (813) 228-2562
                                        E-mail: Stephen_Consuegra@fd.org

## **CERTIFICATE OF SERVICE**

I HEARBY CERTIFY that on February 3, 2026, a true and correct copy of the foregoing was furnished by the CM/ECF system with the Clerk of the Court, which will send a notice of the electronic filing to:

AUSA Michael Carl Sinacore.

                                                  */s/ Stephen Consuegra*
                                                  Stephen Consuegra
                                                  Assistant Federal Defender