# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                           **Case No. 8:25-cr-00456-KKM-AAS**

**DESIREE DOREEN SEGARI**

_____/

## SENTENCING MEMORANDUM

The Defendant, Desiree Doreen Segari, pursuant to Fed. R. Crim. P. 32, submits her sentencing memorandum in support of a downward variance and a 5-year probationary sentence. In support of such a sentence, she asks this Court to pay careful consideration of the *Booker* factors at 18 U.S.C. § 3553(a), including: her history and characteristics; the nature and circumstances of the offense; the need for the sentence imposed to reflect just punishment, respect for the law, adequate deterrence, and correctional treatment; and the need to avoid any unwarranted sentencing disparities among similarly situated defendants.

**I.      The history and characteristics of Desiree Doreen Segari.**

Ms. Segari has always been a fighter who's always ready to defend those who can't defend themselves. She speaks truth to power. She's taken on this mantle, this persona, after overcoming great adversities and tragedies in her life. But why? Why does she feel the need to step in? To speak up? Maybe it's because

1

she didn't speak up for someone before. Someone in her past. Someone that she knows. Someone that's deserving of her help. Herself.

Ms. Segari didn't have a happy childhood. Her mother was a drunkard. She had mental health issues and was verbally and psychologically abusive towards her. For instance, when Ms. Segari was older, her mother had paranoid delusions and falsely accused her of sleeping with her boyfriends. Her father, meanwhile, was physically abusive and beat her mother. The beatings finally stopped as soon as they divorced. Ms. Segari was about 3 years old when her parents split up. Both of her parents had been abused verbally, physically, and sexually when they themselves were kids. This explains their behavior. From time to time, these traits are known to get passed down the generations. They did for Ms. Segari's father, her father's father, and maybe even his father before him.

Ms. Segari's father was a drug addict. He sexually abused her when she was 8 years old and pimped her out, passing her around grown men for a quick buck, either to pay off some debts or maybe to score some drugs. Her mother figured things out, noticing that things weren't right with her. She threatened her father, and it never happened again. Ms. Segari had to grow up quickly, and she became her mother's caretaker, who often succumbed to many of her afflictions and addictions.

2

Growing up quickly took a toll on Ms. Segari. Taking care of a loved one is stressful. Now try doing that when you're a child. The pressure was too much for Ms. Segari and she attempted suicide when she was 11 years old. She swallowed a bottle of her mother's prescribed opiates to try and kill herself. For better or worse, she was mercifully unsuccessful. At the age of 16, Ms. Segari moved in with her grandparents. They were cooky and crazy in their own ways but were much better suited than her parents to take care of her.

When Ms. Segari was in high school, she was the victim of rape. Her friends played in a band together and she went to go see them practice at their house one day. She was down in the basement watching them play when she started to get dizzy. She made her way upstairs and passed out. She awoke to two men that were on top of her. Each of them raped her. She never told a soul. But they did. Word spread. She was the target of gossip and labeled as a whore. She dropped out of high school in the 11th grade. She really didn't see the need to continue with school. She was already waiting tables at restaurants and was making a lot of money. Dropping out made sense to her. (So, does leaving school because you're a pariah.) Years later, she was raped again and again on multiple occasions by different men. She never spoke.

Ms. Segari turned to drugs and alcohol starting at a young age. She drank constantly and became an alcoholic. She then moved onto drugs. She started

using marijuana at age 14. She never really stopped. She then began using cocaine in high school around 1999 or 2000. She did cocaine regularly, and her usage ramped up the older she got. She was addicted. Ms. Segari was diagnosed later in life with bipolar disorder by Center Place Health. She took some meds but didn't really see the point. Ms. Segari also had drug issues and would self-medicate with cocaine and marijuana. She had brief stints of sobriety. But the bottle and the drugs still beckoned. Her stints of sobriety grew ever shorter. Most recently, before her arrest, she was drinking and snorting cocaine every day.

This case, for better or worse, has brought about the longest point of sobriety in Ms. Segari's life. She is receiving treatment at Centerstone and has recalibrated her life. She dumped her toxic boyfriend, fixed her credit (as best as she could), and found joy in working with her hands doing construction. She is much more in tune with God and religion now. And she has grown closer than ever with her younger sister, who fully supports her during this trying time of her life. Ms. Segari has been going to AA meetings and has terrific support group. Many of them have written letters of support on her behalf and are attached for the Court's consideration as Exhibit 1.

## II.     The nature and circumstances of the offense.

In August 2025, Ms. Segari posted several TikTok videos, 2 of which were the subject of the § 875(c) threats charge. Doc. 88 at ¶¶ 8–11. She derided the

4

MAGA movement, satirized them, and exaggerated heavily in her videos. *Id.* at

¶ 14. Ms. Segari was in disbelief that she would be arrested on a complaint for

the words that she expressed. *Id.* She was fully cooperative with law

enforcement; she freely and voluntarily spoke with them regarding her TikTok

videos, believing them to be a form of parody or satire. *Id.* Thereafter, Ms. Segari

was charged in a 1-count indictment for transmitting threats in interstate

commerce in violation of 18 U.S.C. § 875(c). Doc. 1.

Ms. Segari exercised her fundamental right to a jury trial under the Sixth

Amendment and asserted, among other arguments, that she was engaging in

protected free speech under the First Amendment in her TikTok videos. Doc. 71,

77. The government took issue with some of the things she said, such as "See

MAGA pew pew MAGA," and her display of "finger guns," alleging them to be

§ 875(c) threats against an entire political movement. Doc. 88 at ¶ 10. The jury

rendered a guilty verdict against her, Doc. at 73, and the Court denied her Rule

29 motion for judgment of acquittal, Doc. 84. There were no identifiable victims

in this case. Doc. 88 at ¶ 15. (Nor could there be any.)

### III.   The need for the sentence imposed to reflect just punishment, respect for the law, adequate deterrence, and correctional treatment.

Ms. Segari faces up to 5 years in prison for transmitting § 875(c) threats.

Doc. 88 at ¶¶ 78, 29, 30. Ms. Segari doesn't have any adjudications or convictions

of any kind. Doc. 88 at ¶¶ 28, 29, 30. She has been a model defendant while on pretrial release. Her advisory guideline range is between 15 to 21 months in prison, she's eligible for up to 3 years of supervised release and up to 5 years of probation. Doc. 88 at ¶¶ 61, 63–66. Neither the statutory maximum penalty nor a sentence within probation's guideline calculations are warranted here. The Court should vary downward and sentence her to something must less.

Reasonable minds may differ on whether Ms. Segari was expressing First Amendment protected speech when she posted her TikTok videos. It would be a miscarriage of justice for her to serve any time in prison during the pendency of her eventual appeal, especially with such weighty issues concerning the government's proof, interstate commerce, her Fifth Amendment due process rights, and her First Amendment speech rights. Ms. Segari's lack of criminal history, her cooperation with law enforcement, and her compliance while on pretrial release demonstrates that she's a minimal risk to the community and to public safety. Balancing the equities here, it stands to reason that sentencing Ms. Segari to 5-year term of probation would be more than sufficient to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to protect the public. 18 U.S.C. § 3553(a)(2)(A)–(D).

## IV.    The need to avoid any unwarranted sentencing disparities among similarly situated defendants.

The Sentencing Commission's data files were pulled for the past 10 years through fiscal year 2025, focusing on § 875(c) cases here in the Eleventh Circuit. Seventy-four cases were identified. This data set was analyzed using pivot tables and charts to demonstrate the kinds of sentences defendants received. The data also includes recent cases that should be counted later in FY 2026.[1] There are 4 such cases, bringing the total number of § 875(c) cases to seventy-eight.[2]

The data is compelling and supports her reasonable ask for 5 years of probation. Fourteen defendants—each having higher total offense levels than Ms. Segari—received probationary sentences, 5 of whom were sentenced in the Middle District. The same is true for another 18 defendants, each of whom received time-served sentences and most of them receiving a 3-year term of supervised release. The charts are all sorted in ascending order of Total Offense Level, and the sample size of defendants include those who are ± 4 levels within Ms. Segari's offense level of 14 (*i.e.*, from as low as 10 to as high as 18). The first chart below shows all the defendants that received probationary sentences.

---

[1] These cases show up as "N/A" in the graphs and charts and are missing the USSCIDN.
[2] Every effort was made to make all this data as comprehensive as possible, including cross-referencing these cases in PACER and contacting counsel for each defendant to get the most accurate information possible.

| Case Number | District | Defendant | Sentence Imposed | Total Offense Level | CHC | Guideline Range | Guideline Range Location | USSCIDN |
|---|---|---|---|---|---|---|---|---|
| 1:19-cr-20322-UU | SDFL | Rafael Dominguez | Probation = 3 years w/6 months of home detention | 10 | 1 | 6-12 | Below | 2565823 |
| 4:16-cr-20-RH-CAS | NDFL | Pierce Anthony Boykins | Probation = 3 years w/ 6 months of home detention | 10 | 1 | 6-12 | Below | 2356927 |
| 6:17-cr-261-Orl-41DCI | MDFL | Charles Zachary Howard | Probation = 5 years | 10 | 1 | 6-12 | Below | 2449965 |
| 1:15-cr-00066-JRH-BKE | SDGA | Raffaele Manzi | Probation = 5 years | 12 | 1 | 10-16 | Below | 2317001 |
| 1:16-cr-20458-DPG | SDFL | Mark Silverio Hernandez | Probation = 3 years | 12 | 1 | 10-16 | Below | 2378044 |
| 3:21-cr-00031-TKW | NDFL | Eugene Huelsman | Probation = 5 years w/ 6 months of home detention and $10,000 fine | 12 | 1 | 10-16 | Below | 2751269 |
| 8:17-cr-471-T-33APF | MDFL | Gregory Gaddis | Probation = 5 years | 12 | 1 | 10-16 | Below | 2555524 |
| 8:21-cr-52-SDM-CPT | MDFL | Benjamin Tucker Patz | Probation = 3 years w/ 6 months of home detention | 12 | 1 | 10-16 | Below | 2680841 |
| 8:23-cr-310-VMC-TGW | MDFL | Michael Basaman | Probation = 5 years | 12 | 1 | 10-16 | Below | 2872409 |
| 9:23-cr-80164-WPD | SDFL | Tracy Marie Fiorenza | Probation = 1 year | 12 | 1 | 10-16 | Below | N/A |
| 4:20-cr-00013-TCB-WEJ | NDGA | Justin Adam Madaris | Probation = 3 years | 15 | 1 | 18-24 | Below | 2742069 |

| Case Number | District | Defendant | Sentence Imposed | Total Offense Level | CHC | Guideline Range | Guideline Range Location | USSCIDN |
|---|---|---|---|---|---|---|---|---|
| 8:24-cr-451-VMC-UAM | MDFL | Robert Jacob Trout, III | Probation = 5 years w/6 months of home detention | 15 | 1 | 18-24 | Below | 2872005 |
| 8:22-cr-374-TPB-TGW | MDFL | Justin Rancourt | Probation = 5 years | 16 | 3 | 27-33 | Below | 2813603 |
| 3:24-cr-68-MMH-SJH | MDFL | Harry James Butler | Probation = 3 years, 150 Comm. Serv. Hrs., and $50,000 fine | 17 | 1 | 24-30 | Below | N/A |
| 9:19-cr-80221-DMM | SDFL | Michael Shapiro | Probation = 3 years | N/A | N/A | N/A | N/A | 2605825 |

There aren't any defendants that have a total offense level of 14 like Ms. Segari. Those with an offense level of 15 and above include Madarsi, Trout, Rancourt, Butler, and Shapiro. Their probationary sentences run the gamut; each having received probation for a term of either 3 or 5 years. One of them, Rancourt, was also sentenced to 6 months of home detention. All their criminal history levels are one. Moving two levels down from a total offense level of 14, we find 7 defendants, Manzi, Hernandez, Huelsman, Gaddis, Patz, Basaman, and Fiorenza, who were sentenced to 1-, 3-, and 5-year terms of probation, one of them also being sentenced to 6 months of home detention. The same thing occurs at level 10. Dominguez, Boykins, and Howard each received 3- to 5-year probationary terms. Probation is the norm. Now let's look at the probation table in the graph below.

9



Defendant & Case Number, Sentence Imposed, Guideline Location and Range,
Total Offense Level & Criminal History Category

This graph shows each of the probationary sentences just discussed. The defendants are grouped together in ascending order from left to right by criminal history category. They are further grouped by their total offense level, guideline range, and the location of their guideline (*e.g.*, below, midrange, or above). And each of the defendants is color-coded by district. Let's next move to the supervised release table.

| Case Number | District | Defendant | Sentence Imposed | Supervised Release Term (years) | Total Offense Level | CHC | Guideline Range | Guideline Range Location | USSCIDN |
|---|---|---|---|---|---|---|---|---|---|
| 2:19-cr-00018-RWS-JCF | NDFL | Jason Green | Time served | 1 | 10 | 2 | 8-14 | Below | 2583738 |
| 5:21-cr-00066-TES-CHW | MDGA | Derrick Douglas | Time served | 2 | 10 | 4 | 15-21 | Below | 2741586 |
| 0:17-cr-30208-WPD | SDFL | Jarvas Meekins | Time served | 2 | 12 | 3 | 15-21 | Below | 2462050 |
| 0:21-cr-60066-WPD | SDFL | Mario Francisco Perez | Time served | 3 | 12 | 1 | 10-16 | Below | 2688883 |
| 1:22-cr-00251-RAH-JTA | MDAL | Matthew Lee Ketron | Time served (14 months) | 2 | 12 | 2 | 12-18 | Midrange | 2835740 |
| 1:24-cr-20074-KMW | SDFL | Ezequiel Enrique Martinez | Time served | 3 | 12 | 1 | 10-16 | Below | N/A |
| 1-18-cr-00053-WS(1) | SDAL | Matthew Dean Adams | Time served | 3 | 12 | 1 | 10-16 | Below | 2482329 |
| 2:19-cr-14040-KMM | SDFL | Charlton Edward La Chase | Time served | 3 | 12 | 3 | 15-21 | Below | 2641567 |
| 2:20-cr-00043-LGW-BWC | SDGA | Benjamin Stasko | Time served | 3 | 12 | 1 | 10-16 | Below | 2753763 |
| 4:20-cr-00008-CDL-CHW | MDGA | Ernesto Rivera-Rodriguez | Time served | 3 | 12 | 2 | 12-18 | Below | 2652647 |
| 3:17-cr-00053-RV | NDFL | Brooke A. Cromer | Time served | 3 | 13 | 1 | 12-18 | Below | 2477203 |
| 6:23-cr-9-PGB-EJK | MDFL | Sean Michael Albert | Time served | 3 | 13 | 1 | 12-18 | Below | 2825019 |
| 7:20-cr-00017-WLS-TQL | MDGA | Shawn Charles Merdinger | Time served | 3 | 13 | 1 | 12-18 | Below | 2730053 |
| 1:23-cr-00100-KD-MU(1) | SDAL | Justin Gormon | Time served | 3 | 15 | 1 | 18-24 | Below | 2867193 |
| 1:24-cr-00098-KD | SDAL | Richard Colvin | Time served | 3 | 18 | 1 | 27-33 | Below | N/A |

11

| Case Number | District | Defendant | Sentence Imposed | Supervised Release Term (years) | Total Offense Level | CHC | Guideline Range | Guideline Range Location | USSCIDN |
|---|---|---|---|---|---|---|---|---|---|
| 2:22-cr-00005-LGW-BWC | SDGA | Dion Zessin | Time served | 3 | 23 | 2 | 51-60 | Below | N/A |
| 0:22-cr-60184-JB | SDFL | Landon Kent | Time served | 3 | N/A | N/A | N/A | N/A | N/A |
| 4:22-cr-00118-RSB-CLR | SDGA | Bryant Montrais Stubbs | Time served | 3 | N/A | N/A | N/A | N/A | N/A |

Like the probation table above, the supervised release table only shows 3 defendants with a total offense level that's higher than 14: Merdinger, Gormon, Colvin, and Zessin. Each of them received 3 years of supervised release. What's most interesting is that Zessin, with a total offense level of 23, a criminal history category 2, and a guideline range between 51 to 60 months in prison, received the same sentence as Merdinger, Gormon, and Colvin. Zessin also received the same 3-year term of supervised release as defendants that were 10 or more levels below him. As discussed previously regarding cases outside the Commission's data set, the last 2 defendants, Kent and Stubbs, each received time-served sentences and 3 years of supervised release; but we don't know where they landed in terms of offense level, criminal history, their guideline range, and whether their sentence was below, above, or within the guideline range. Let's take a look at the supervised release table in graph form.

# Supervised Release for 875(c) cases in the 11th Circuit
# FY 2015-2025



The charts and tables are highly instructive in helping to avoid any unwarranted sentencing disparities. There is plenty of data to support Ms. Segari's request for a 5-year term of probation. The same is true for a time-served sentence with a 3-year term of supervised release. But what about prison sentences? Are there any defendants in this data set that have the same total offense level and criminal history category as Ms. Segari? The answer is yes. Two defendants meet these criteria: Frank Anthony Pezzuto and Melanie Harris. Let's look at the data and see what prison sentences they received.



**Prison Sentences for 875(c) cases in the 11th Circuit FY 2015-2025**

Defendant & Case Number, Sentence Imposed, Guideline Location and Range, Total Offense Level & Criminal History Category

| Case Number | District | Defendant | Sentence Imposed | Prison Term (months) | Supervised Release Term (years) | Total Offense Level | CHC | Guideline Range | Guideline Range Location | USSCIDN |
|---|---|---|---|---|---|---|---|---|---|---|
| 0:23-cr-60050-RKA | SDFL | Melanie Harris | Prison = 32 months | 32 | 3 | 14 | 1 | 15-21 | Above | 2870435 |
| 8:20-cr-287-WFJ-CPT | MDFL | Frank Anthony Pezzuto | Prison = 15 months and $7,500 fine | 15 | 3 | 14 | 1 | 15-21 | Low end | 2729265 |

14

### a. Frank Anthony Pezzuto.

Starting with Pezzuto, he was tried and convicted here in Tampa in the Middle District. He received a sentence of 15 months in prison followed by 3 years of supervised release, representing a guideline sentence on the low end. Pezzuto was charged in a 3-count indictment for § 875(c) threats for messages he left on the voicemails of 3 different members of congress over a 2-week span. United States v. Frank Anthony Pezzuto, No. 8:20-cr-00287-WFJ-CPT-1, Indictment (Doc. 1 at 1–2). Pezzuto went to trial before a jury and was convicted on all 3 counts. *Id.*, Verdict (Doc. 101). Pezzuto, in apologizing for his crimes, said this about the nature and circumstances of the offense: "The Defendant left three voicemails with threats of violence and death with various members of Congress and their staff." *Id.*, Defendant's Sentencing Memorandum (Doc. 126 at 8).

Pezzuto submitted a psychological evaluation, his pretrial services report, letters of support, and an apology letter in mitigation of his sentence. *Id.* (Ex. 1–5). Pezzuto was a Vietnam Veteran and was diagnosed when he was in service for Military Sexual Trauma and PTSD. *Id.* (Ex. 5 at 1). Dr. R. Drake diagnosed him with PTSD, Generalized Anxiety Disorder, Unspecified Personality Disorder, severe alcoholism (in remission), and a mild disorder for using marijuana. *Id.* at 14. In his apology letter to the court, Pezzuto recounted his past traumas in the military, he regretted making the calls to the congressmen,

15

blaming his actions on drinking and smoking pot at the time, and asked for the court's mercy. *Id.* (Ex. 5). The Court sentenced him on the low end of his advisory guideline range, sentencing him to 15 months in prison. *Id.*, Judgment (Doc. 133).

Weighing the relative harms and Pezzuto's criminal conduct against Ms. Segari's, Pezzuto's conduct was far worse and much more dangerous than Ms. Segari's conduct. In the TikTok videos that Ms. Segari posted, she didn't make any specific threats of harm directed at any identifiable person in any way, shape, or form. This is in stark contrast to the specific threats Pezzuto made to 3 different congressmen and the fear that their staff members must've had in fielding his voicemails. Sentencing Ms. Segari to probation is warranted.

### b. Melanie Harris.

Let's finish up with Harris. She was prosecuted in the Southern District of Florida in Ft. Lauderdale and received a 32-month prison sentence followed by 3 years of supervised release, representing an above-guideline sentence. In a superseding indictment, Harris was charged with 6 counts of § 875(c) threats and 1 count of making repeated harassing phone calls (totaling 54 voicemails) in violation of 47 U.S.C. § 223(a)(1)(E). United States v. Melanie Harris, 0:23-cr-60050-RKA-1, Superseding Indictment (Doc. 7).

A plea agreement was reached between Harris and the government; in exchange for Harris's guilty plea to Count 4 of the superseding indictment, the

government would move to dismiss the remaining counts against her. *Id.*, Plea Agreement (Doc. 80). Count 4 of the superseding indictment alleged that Harris had called Victim 1 and left her a voicemail, saying that " 'I'll cut your fucking head off kiker.' " *Id.* (Doc. 7 at 2–3). The parties agreed on a factual basis, quoting the voicemail and defining the term "kike" as an anti-Semitic Jewish slur. *Id.* Stipulated Factual Basis (Doc. 79). Harris pled guilty in accordance with their plea agreement. *Id.* (Docs. 81–83).

Harris filed her objections to the presentence investigation report and requested a downward departure or variance. *Id.* (Doc. 90). She asked for a 12-month sentence, representing a 1-level decrease, and recognized that she "inflicted significant emotional pain on the victims." *Id.* at 4. Under §5H1.3, she attributed her conduct to her mental health conditions and her diminished capacity at the time she committed the offense, stating that mental health professionals believed she had "long-standing mental health issues that affect how she perceives herself, other people, and the world around her." *Id.* at 7. She also discussed her diminishing physical health and being her mother's primary caretaker as § 3553(a)(1) factor for a downward variance. *Id.* at 4–5.

Harris also cited the Sentencing Commission's Judiciary Sentencing Information Tool (JSIN) for threatening and harassing communications under §2A6.1 to avoid sentencing disparities, stating that of the fifteen defendants who

17

were similarly situated to her, 2 received probation and of the other 13, "53% received a downward departure or variance and 33% received a within guideline sentence." *Id.* at 5–6.

The government filed its own sentencing memorandum, requesting an upward departure or variance and a prison term of 36 months followed by 3 years of supervised release. *Id.* (Doc. 95 at 1). The government summarized Harris's voicemails and the scope of her criminal conduct succinctly:

> The defendant's calls and voicemails included in the Superseding Information [sic] were filled with virulent anti-Semitic content and gloating over the death of Jews who had been murdered, including vile comments about Anne Frank. Some of these voicemails and calls also included graphic and violent sexual references and/or racist slurs. The PSR provides the excerpts of the threats contained in Counts 1 through 6, as well as excerpts of a sample of the calls and voicemails that made up the pattern of harassment charged in Count 7. PSR at ¶¶ 13, 14. As the PSR describes, these calls and voicemails were replete with references to "kikes," "shot grandmas," "Auschwitz," "Anne Frank," and even included a November 27, 2022 voicemail where the defendant said, "You wanna play hymie games with me. I can Third Reich things with you, kike Jew." Yet perhaps the clearest example of the viciousness of the anti-Semitic hate that the defendant was inflicting upon the victims can be found in voicemail 1190. That nearly 2-minute long voicemail concludes with the defendant screaming, "Seig Heil, kill kikers" five times.

*Id.* at 2–3 (footnotes omitted). The government sought an upward departure under §5K2.0 based on the exceptional nature of Harris's vile and reprehensible conduct. *Id.* at 7–9. It also sought an upward departure under §5K2.8 because Harris's conduct was " 'unusually heinous, cruel, brutal, or degrading to the victim[.]' " *Id.* at 11–12. The court sided with the government and sentenced

18

Harris above her guidelines to 36 months in prison followed by 3 years of supervised release, representing an upward swing of 5 levels. *Id.* Judgment (Doc. 106).

Harris's threatening voicemails were beyond the pale. They don't even come close to the statements Ms. Segari made in her TikTok videos. On the one hand, Harris's request for a 12-month sentence was unreasonable and she was deserving of a sentence above her guidelines. On the other hand, Ms. Segari's request for 5 years of probation is justified, based on what she said in and of itself and based on her conduct when comparing them to others who were similarly situated. For all these reasons, the Court should vary downward and sentence her to 5 years of probation.

## V.    Conclusion.

This isn't your typical threats case. Ms. Segari parodied and satirized the MAGA movement writ large. She was charged, tried, and convicted in a 1-count indictment for making threats in interstate commerce in violation of 18 U.S.C. § 875(c). No victims. No specifics. Just exaggerated expressions directed towards adherents of a political movement. Her words were nothing like those that Pezzuto and Harris espoused in their § 875(c) threats cases. Their words were targeted, specific, vitriolic, and dangerous expressions—true threats— that aren't protected by the First Amendment. Ms. Segari's whole case—her history and

19

characteristics, the nature and circumstances of the offense, and the need to avoid sentencing disparities—cries out for a downward variance and a sentence of probation. Anything more than that would be a miscarriage of justice.

For all these reasons, the Court should grant Ms. Segari a downward variance and sentence her to 5 years of probation with reasonable conditions to follow. This probationary sentence would be sufficient but not greater than necessary to accomplish the statutory purposes of sentencing.

Respectfully submitted,

Charles L. Pritchard, Jr.
Federal Defender

/s/ Stephen Consuegra
Assistant Federal Public Defender
Florida Bar No. 105816
400 N Tampa St, Ste. 2700
Tampa, FL 33602
Phone: (813) 228-2715
Fax: (813) 228-2562
E-mail:§ Stephen_Consuegra@fd.org

20

## CERTIFICATE OF SERVICE

I HEARBY CERTIFY that on May 1, 2026, a true and correct copy of the foregoing was furnished by the CM/ECF system with the Clerk of the Court, which will send a notice of the electronic filing to the following:

AUSA Michael C. Sinacore.

/s/ Stephen Consuegra
Stephen Consuegra
Assistant Federal Defender